UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| AUTUMN FIXEL, | : | CASE NO. 22-cv-1896 |
|  | : |  |
| Plaintiff, | : | OPINION & ORDER |
|  | : | [Resolving Doc. 25, 26] |
| v. | : |  |
|  | : |  |
| LSMJ1, LLC dba Luca West, et al. | : |  |
|  | : |  |
| Defendants. | : |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this workplace sexual harassment case, Plaintiff Autumn Fixel says that her supervisor sexually harassed her on multiple occasions while she was working as a waitress at Luca West restaurant.  Plaintiff sues Luca West; its Chief Executive, Manjola Sema; its Executive Chef, Luca Sema; and Luca West chef Sheptim ("Timmy") Sema (collectively, the "Luca Defendants").[1]

The Luca Defendants have moved for summary judgment on Plaintiff's Title VII hostile work environment, wrongful termination, and retaliation claims, and her claims for intentional infliction of emotional distress and negligent supervision/retention.  Because the Luca Defendants did not know (nor have reason to know) that Plaintiff was being harassed until after she resigned, the Court **GRANTS** the Luca Defendants' motion for summary judgment on all counts.

---

[1] Plaintiff also sues her former supervisor, Defendant Manuel Vasquez, for harassing and sexually assaulting her, but this order deals only with the Luca Defendants' summary judgment motion.

Case No. 22-cv-1896
GWIN, J.

## I.    BACKGROUND

During a short period, from June to August 2021, Plaintiff Autumn Fixel worked as a waitress at the Luca West restaurant.[2]  Luca West operates as a Westlake, Ohio, Italian restaurant.[3] Defendants Manjola Sema and Luca Sema own the restaurant.  They respectively serve as the restaurant's CEO and Executive Chef.[4]  A third Sema family member, Defendant Sheptim ("Timmy") Sema, works as a cook at Luca West.[5]  Finally, Defendant Manuel Vasquez acted as an assistant manager.[6]

Plaintiff Fixel says that Assistant Manager Defendant Vasquez sexually harassed her on multiple occasions throughout her brief time working at Luca West.[7]  Defendant Vasquez has elsewhere denied harassing Plaintiff.  Although her allegations remain disputed, the Court summarizes those allegations here, because the Court has determined that the Luca Defendants are not vicariously or directly liable, even if the allegations are true.

In summary, Plaintiff alleges that Assistant Manager Vasquez kissed her on the forehead, made inappropriate comments about her, pinched her backside, and more.[8]  Plaintiff also says that she reported this harassment to Defendant Timmy on at least two occasions.

On the first occasion, Defendant Timmy told Plaintiff that he would flag Defendant Vasquez's behavior with Defendants Manjola and Luca.[9]  It is undisputed that he did not.

---

[2] Doc. 33-1 at PageID #: 408.
[3] Doc. 25-3 at PageID #: 175.
[4] *Id.*
[5] *Id.*
[6] Doc. 33-1 at PageID #: 408.
[7] *Id.*
[8] *Id.*
[9] *Id.*

Case No. 22-cv-1896
GWIN, J.

Plaintiff then says that sometime after her first complaint to Defendant Timmy, on August 18, 2021, Defendant Vasquez physically harassed her twice more, first by wrapping his arms around her and kissing her neck and later by grabbing her arm.  In the intervening time between those two incidents, Plaintiff again spoke to Defendant cook Timmy about Vasquez's behavior.  Defendant Timmy allegedly replied that they would "deal with this later."[10]

Plaintiff resigned from her position at Luca West the next day.  Almost a week later, Plaintiff texted Defendant Manjola directly to explain why she had resigned.[11]  This was the first time that Defendant Manjola, Luca West's CEO and General Manager, learned of the harassment allegations against Vasquez.

Defendant Luca West maintains an anti-harassment and anti-discrimination policy that directs employees to report any unlawful job-related harassment to their supervisor.[12]  Employees who are not comfortable speaking with their supervisor or who are not satisfied with how their complaint has been handled by the supervisor are directed to report their issue to the restaurant's CEO or Executive Chef, that is, to Defendants Manjola or Luca Sema.[13]

The parties do not dispute that Plaintiff never reported her harassment to her direct supervisor—since her supervisor was her harasser—nor did she instead contact either Defendants Manjola or Luca before she resigned. Thus, this summary judgment motion turns entirely on whether Plaintiff's complaints to Defendant Timmy, a cook at Luca West, sufficed to put Luca West on notice of Defendant Vasquez's conduct.

---

[10] *Id.*
[11] Doc. 25-3 at PageID #: 212.
[12] *Id.* at PageID #: 186.
[13] *Id.*

Case No. 22-cv-1896
GWIN, J.

## II.    DISCUSSON

### A.  Summary Judgment Standard

"Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [...] [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]

### B.  Count 1: Hostile Work Environment

#### 1.  Strict Liability

A plaintiff raising a Title VII hostile work environment claim based on sexual harassment must show that "she was subjected to unwelcome harassment based on her sex, the harassment created a hostile work environment, and [the employer] failed to take reasonable action to prevent and correct the harassment."[15]

Here, Plaintiff Fixel argues that her supervisor, Defendant Vasquez, sexually harassed her and that the Luca Defendants failed to prevent or correct Defendant Vasquez's behavior.  Plaintiff Fixel says this created a hostile working environment.

In evaluating whether an employer is liable under Title VII for sexual harassment committed by a supervisor against an employee, "[t]he Supreme Court distinguishes between supervisor harassment unaccompanied by an adverse official act and supervisor

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citations omitted).
[15] *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 681 (6th Cir. 2005).

- 4 -

Case No. 22-cv-1896
GWIN, J.

harassment accompanied by a tangible employment action.  An employer is strictly liable for supervisor harassment that 'culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.'"[16]

But if the employer did not take any tangible adverse employment actions against the plaintiff, the employer can escape liability for the supervisor's misconduct by invoking a doctrine known as the *Ellerth/Faragher* defense.[17]  That defense requires the employer to show: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[18]

As an initial matter, the parties dispute whether the Luca Defendants can raise an *Ellerth/Faragher* defense or whether Plaintiff suffered an adverse employment action that keeps Defendants squarely within the strict liability zone of Title VII.  Plaintiff argues that strict liability applies because (1) her working conditions were so hostile that they amounted to a constructive discharge and (2) a constructive discharge is an adverse employment action because it is functionally the same as being terminated.

Even if Plaintiff could show she was constructively discharged, Plaintiff's argument is wrong as a matter of law.  In *Pennsylvania State Police v. Suders*, the Supreme Court directly addressed the question of when an employer can raise the *Ellerth/Faragher* defense against an employee who alleges constructive discharge.[19]  Specifically, the Court held that

---

[16] *Collette*, 126 F. App'x at 682 (citing *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998)).
[17] See *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).
[18] *Collette*, 126 F. App'x at 682.
[19] 542 U.S. 129 (2004).

Case No. 22-cv-1896
GWIN, J.

"when an official act does not underlie the constructive discharge," the employer should be permitted to raise the *Ellerth/Faragher* affirmative defense.[20]  An "official act" is typically an action "reflected in company records," such as "a demotion or a reduction in compensation," that "shows beyond question that the supervisor has used his managerial or controlling position to the employee's disadvantage."[21]  Absent evidence of an official act, "the extent to which the supervisor's misconduct has been aided by the agency relation […] is less certain."[22]  "That uncertainty […] justifies affording the employer the chance to establish, through the *Ellerth/Faragher* affirmative defense, that it should not be held vicariously liable."[23]

Plaintiff Fixel does not show evidence that before her resignation, Defendant Vasquez or any other supervisor altered her working conditions to demote her, reduce her compensation, or otherwise change the general conditions of her employment against her. Indeed, the Luca Defendants submitted affidavits stating that, to the contrary, they refrained from disciplining her on several occasions where they believe discipline might have been appropriate.[24]  Because Defendant Vasquez did not wield his formal power as a supervisor against Plaintiff when he allegedly harassed her, the Luca Defendants may raise an *Ellerth/Faragher* defense.

### 2.  Ellerth/Faragher Defense

The next question, then, is whether at this summary judgment stage, there is any genuine dispute of fact as to whether the two prongs of the *Ellerth/Faragher* defense have

---

[20] *Suders*, 542 U.S. at 148.
[21] *Id.*
[22] *Id.* at 148–149.
[23] *Id.* at 149. *See also Collette*, 126 F. App'x at 683.
[24] Doc. 25-3 at PageID #: 176.

- 6 -

Case No. 22-cv-1896
GWIN, J.

been met.  Again, those prongs are "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[25]  The Court finds that the Luca Defendants have established both prongs and are entitled to judgment as a matter of law on Plaintiff's Title VII hostile work environment claim.

### a.  Defendants' reasonable care in preventing or correcting harassment

"Under the first prong of the defense, employers have an affirmative duty to prevent sexual harassment by supervisors."[26]  This requires an employer to take both prophylactic and remedial measures to prevent harassment.  The evidence provided in the parties' summary judgment briefs establishes that the Luca Defendants had implemented an effective preventative anti-harassment policy and that their duty to take remedial action to stop ongoing harassment did not arise before Plaintiff resigned because Defendants were not aware of Plaintiff's harassment.

### i.  Prophylactic measures required to prevent harassment

On the prophylactic side, an employer can satisfy their duty to prevent harassment by showing that they have an effective anti-harassment policy in place.  "While there is no exact formula for what constitutes a reasonable sexual harassment policy, an effective policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a

---

[25] *Collette*, 126 F. App'x at 682.
[26] *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 349 (6th Cir. 2005) (citation omitted).

Case No. 22-cv-1896
GWIN, J.

mechanism for bypassing a harassing supervisor when making a complaint; (4) and provide for training regarding the policy."[27]

The Luca Defendants submitted to the Court copies of both the employee handbook—which contains the company's general anti-harassment policy—and a handbook addendum for managerial employees that instructs managers and supervisors on what to do when employees violate company policies.[28]  In combination, these two employee guidebooks satisfy the requirements for a facially effective anti-harassment policy.

The general employee handbook unequivocally forbids sexual harassment and explains that sexual harassment includes unwelcome advances, requests for sexual favors, uninvited touching, and offensive verbal comments.[29]  The manager addendum directs supervisors to prepare an Employee Disciplinary Report and to take appropriate action, including written warnings, suspension, or termination, against any employee who violates any of the company policies.  The policy then tells employees who witness or are subjected to harassment to report such incidents to their supervisor, or, if they feel uncomfortable doing so, to contact the restaurant's General Manager (Defendant Manjola Sema) or Executive Chef (Defendant Luca Sema).[30]  Thus, the restaurant's policies on their face impose a reporting duty on supervisors and provide employees with clear avenues of

---

[27] *Id.*
[28] Doc. 25-3 at PageID #: 180–205; Doc. 40-1 at PageID #: 585.
[29] *Id.* at PageID #:186.
[30] *Id.*

- 8 -

Case No. 22-cv-1896
GWIN, J.

reporting harassment, including a means of bypassing their supervisor and reporting up the

chain of authority.

Luca West's policies were not only facially effective but also effectively

implemented.  The Luca Defendants submitted uncontroverted evidence that the General

Manager, Defendant Manjola Sema, gave employees her personal cell phone number, that

Plaintiff had that cell phone number, and that Plaintiff was able to use that number to

report her harassment experience to Defendant Manjola over text after Plaintiff resigned.[31]

At the Court's request, the parties further briefed the issue of whether the Luca

Defendants provided Plaintiff and other employees training on the anti-harassment policy.

Defendants supplied a form signed by Plaintiff acknowledging that she had received a copy

of the employee handbook and an affidavit from Defendant Manjola attesting that Plaintiff

attended an all-staff meeting at which the anti-harassment policy and harassment reporting

mechanisms were explained.[32]

Plaintiff argues that a genuine dispute of material fact exists as to whether she was

trained on the anti-harassment policy and procedures, but she does not present sufficient

evidence to create a triable issue of fact.  "[S]elf-serving affidavits alone are not enough to

create an issue of fact sufficient to survive summary judgment."[33]  The mere existence of a

scintilla of evidence to support [the non-moving party's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-moving party]."[34]

In her supplemental briefing, Plaintiff provided no evidence of inadequate training

other than her own self-serving affidavit.  Plaintiff conceded that she signed the employee-

---

[31] Doc. 25-3 at PageID #: 211, 213.
[32] *Id.* at PageID #: 210; Doc.40-1 at PageID #: 577.
[33] *Cap. Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019).
[34] *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Case No. 22-cv-1896
GWIN, J.

handbook acknowledgement form and that she attended the staff meeting, arguing only

that she was not given a copy of the handbook to keep in perpetuity and that the anti-

harassment policy was not discussed at the staff meeting.[35]  This is insufficient to create a

genuine dispute as to whether Defendants had adequate prophylactic measures in place.

### ii.  Remedial measures to eliminate harassment

Once an employer knows that harassment has occurred, the employer has a duty to

take steps to eliminate the harassment.[36]  On the other hand, an employer who lacks notice

of harassment "cannot be faulted for failing to respond to or for not remedying the

harassment."[37]  "An employer is deemed to have notice of harassment" if the harassment is

"reported to any supervisor or department head who has been authorized—or is reasonably

believed by a complaining employee to have been authorized—to receive and respond to

or forward such complaints to management."[38]

Here, the parties agree that Plaintiff did not use the company anti-harassment policy

to notify Defendants Manjola or Luca Sema of her harassment, until after she resigned.

Likewise, the parties agree that the Luca Defendants did not take any remedial measures to

prevent Defendant Vasquez from engaging in further harassing conduct until after Plaintiff

---

[35] There is no indication, for example, that Plaintiff made any attempt to depose other attendees of the meeting to provide third-party testimony about how long the meeting lasted, whether the company had a routine of discussing company policies at all-staff meetings (as Defendants have claimed), etc.

[36] *Clark*, 400 F.3d at 349.

[37] *Radmer v. OS Salesco, Inc.*, 218 F. Supp. 3d 1023, 1031 (D. Minn. 2016). *See also Collette*, 126 F. App'x at 683 (discussing when an employer could be expected to know of harassment for purposes of establishing an *Ellerth/Faragher* defense).

[38] *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 277 (6th Cir. 2009).

Case No. 22-cv-1896
GWIN, J.

resigned from her job at Luca West.[39]  The question, then, is whether the Luca Defendants'
inaction is excused because they did not know about the harassment.

Plaintiff argues that even though she did not report her harassment to Defendants
Manjola or Luca, Luca West had notice of the harassment because Plaintiff reported
Vasquez's conduct Defendant Timmy Sema, who worked as a chef.  Plaintiff characterizes
Timmy Sema as a supervisor.[40]  Plaintiff argues that Defendant Timmy qualifies as a
supervisor authorized to receive complaints because he was responsible for day-to-day
operations at Luca West, employees took direction from him regarding work
responsibilities, and because he had keys to the restaurant and access to parts of the
restaurant premises that other employees did not have.[41]

On the other hand, the Luca Defendants insist that Defendant Timmy is merely a
kitchen cook with no authority to hire, discipline, or terminate employees or to change
their roles or responsibilities.[42]  As such, Defendants argue that Defendant Timmy is not a
supervisor whose knowledge of Plaintiff's complaints should be imputed to the restaurant.

The Court agrees with Defendants.  In *Vance v. Ball State University*, the Supreme
Court narrowed the definition of a supervisor for purposes of determining an employer's
vicarious liability under Title VII.  The Supreme Court held that a supervisor is someone
whom the employer has empowered "to take tangible employment actions against the
victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing

---

[39] The Luca Defendants investigated Defendant Vasquez's conduct after Plaintiff resigned but took no further
action because they concluded that Plaintiff's allegations were unsubstantiated. This post-resignation conduct is largely
irrelevant. *See* Doc. 25-3 at PageID#: 218.
[40] *See e.g.*, Doc. 33 at PageID #: 402.
[41] Doc. 33-1.
[42] *See* Doc. 25-2, 25-3, 25-4.

Case No. 22-cv-1896
GWIN, J.

to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[43]

      In giving this definition, the Supreme Court rejected a more "nebulous" definition of "supervisor" proposed by the EEOC, which would have also encompassed individuals who have day-to-day power to direct the actions of others.[44]  By adopting a narrower definition, the Supreme Court sought to make it easier to resolve before trial the question of whether the *Ellerth/Faragher* defense could be invoked.[45]

      The summary judgment record contains no evidence that Defendant Timmy is a supervisor under *Vance*.  Plaintiff has not presented evidence that Defendant Timmy had the power to take tangible employment actions against any employee, much less a supervisor like Defendant Vasquez.

      Plaintiff, therefore, did not communicated her complaints to a supervisor "authorized [...] to receive and respond to or forward such complaints to management."[46] In other words, Plaintiff's complaints to Defendant Timmy are more appropriately characterized as the complaints of a coworker to a more senior coworker, and she has not "with any degree of specificity, pointed to an upper-level [...] manager who directly knew, was in a position to know, or should have known about" her harassment.[47]

      Thus, the Luca Defendants have established that there is no genuine dispute of fact as to prong one of their *Ellerth/Faragher* defense: the restaurant maintained an effective

---

[43] 570 U.S. 421, 431 (2013).
[44] *Id.*
[45] *Id.* at 444.
[46] *Gallagher*, 567 F.3d at 277. Also relevant is the fact that the Luca Defendants had never received any complaints about Defendant Vasquez from other employees. Thus, there were no prior incidents that might have put them on notice.
[47] *Garcia v. ANR Freight Sys., Inc.*, 942 F. Supp. 351, 357 (N.D. Ohio 1996).

Case No. 22-cv-1896
GWIN, J.

anti-harassment policy, it provided training on that policy, and it did not violate its duty to

take remedial measures to prevent harassment because it did not know of any harassment.

### b. Plaintiff's unreasonable failure to take advantage of corrective opportunities

The *Ellerth/Faragher* defense also requires an employer to show that the plaintiff

"unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the employer or to avoid harm otherwise."[48]  An employee who does not use

the employer's harassment reporting procedures merely because of "subjective fears of

confrontation, unpleasantness or retaliation" unreasonably fails to take advantage of the

employer's preventive and corrective measures. [49]

The Luca West employee handbook instructs employees to report harassment or

discrimination either to their supervisor—not possible here because Plaintiff's supervisor

was her harasser—or to contact the restaurant's General Manager or the Executive Chef.

In other circumstances, Plaintiff directly texted Defendant General Manager Manjola

Sema.  Plaintiff's text message exchanges with Defendant Manjola show that Plaintiff had

access to a direct and informal way to report her harassment under the handbook's

guidance.  Yet Plaintiff did not text Defendant Manjola about her harassment until after

Plaintiff resigned from her waitress position.

In their text exchange after the resignation, Defendant Manjola expresses her wish

that Plaintiff would have raised a complaint sooner, so that the restaurant could address it.

Plaintiff responds that she did not do so because "it is very hard to reach out to someone

---

[48] *Collette*, 126 F. App'x at 682.
[49] *Gallagher*, 567 F.3d at 276.

Case No. 22-cv-1896
GWIN, J.

you don't know about an uncomfortable subject [...]."[50]  Because Plaintiff unreasonably

failed to take advantage of Luca West's harassment reporting procedures, the Luca

Defendants have established their *Ellerth/Faragher* defense and are entitled to summary

judgment on Plaintiff's Title VII hostile work environment claim.

### C.  Counts 2 and 3: Wrongful Termination and Retaliation

Plaintiff also argues that the Luca Defendants unlawfully retaliated against and

wrongfully terminated her for complaining about Defendant Vasquez's sexual

harassment.[51]  But Plaintiff does not establish a prima facie claim for either wrongful

discharge or retaliation under Title VII because she has failed to show that the Luca

Defendants took any adverse employment action against her.

#### 1.  Retaliation

To make out a retaliation claim under Title VII, an employee must show (1) she

"engaged in protected activity, (2) the employer knew of the exercise of the protected right,

(3) an adverse employment action was subsequently taken against the employee, and (4)

there was a causal connection between the protected activity and the adverse employment

action."[52]

Title VII protected activity includes complaints to another employee about

"allegedly unlawful practices,"[53] so the Court accepts that, viewing the facts in the light

most favorable to Plaintiff, Plaintiff engaged in protected activity when she complained of

her harassment to Defendant Timmy.  But Plaintiff has not submitted evidence sufficient to

---

[50] Doc. 25-3 at PageID #: 214.
[51] Doc. 1 at PageID #: 13-14.
[52] *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015).
[53] *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008).

Case No. 22-cv-1896
GWIN, J.

establish either that Luca West knew she had engaged in protected activity or that she

suffered an adverse employment action because of that activity.

As discussed above, Luca West's management appears to have been entirely

unaware of Plaintiff's complaints against Vasquez.  Plaintiff has not suggested that

Defendant Timmy passed on her complaints to anyone in a managerial position at Luca

West—indeed, Plaintiff centered her arguments around his failure to do so.  Thus, Luca

West was not aware of Plaintiff engaging in protected activity.

And even if Luca West had been aware of Plaintiff's protected complaints, Plaintiff

did not suffer an adverse employment action as a consequence.  Plaintiff did not

experience any demotion or reduction in pay or responsibility, nor was she fired.[54]

Instead, she argues that she suffered an adverse employment action because she was

constructively discharged by the Luca Defendants' failure to protect her from further

harassment.[55]

Constructive discharge occurs when 1) an employer deliberately creates intolerable

working conditions, as perceived by a reasonable person, and 2) the employer does so

with the intention of forcing the employee to quit.[56]  "In ascertaining the employer's intent,

the court may consider whether it was it was reasonably foreseeable that the harassment

and the employer's handling of it would cause the employee to resign."[57]

"To determine if there is a constructive discharge, both the employer's intent and

the employee's objective feelings must be examined."[58]  Under this test, "the feelings of a

---

[54] *See Tepper, v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (listing actions that constitute adverse employment actions).

[55] Doc. 33 at PageID #: 400–01.

[56] *Ejikeme v. Violet*, 307 F. App'x 944, 950 (6th Cir. 2009).

[57] *Collette*, 126 F. App'x at 682.

[58] *Brister v. Michigan Bell Tel. Co.*, 705 F. App'x 356, 360 (6th Cir. 2017).

Case No. 22-cv-1896
GWIN, J.

reasonable employee would not be enough to show discharge without at least some foreseeability on the part of the employer."[59]

Again, because the Luca Defendants received no knowledge of the harassment, their inaction with regards to Defendant Vasquez's conduct is not indicative of an intent to "deliberately" create intolerable working conditions. Nor was Plaintiff's resignation foreseeable to Defendants, given that Defendants were given no opportunity to address her complaints.[60]  Because Plaintiff's resignation was not foreseeable to the Luca Defendants, Plaintiff was not constructively discharged.

### 2.  Termination

Plaintiff's wrongful termination claim is similarly deficient.  To make a prima facie showing of wrongful termination, under Title VII, an employee must show: (1) that she is part of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees.[61]

As discussed, Plaintiff did not suffer an adverse employment decision through constructive discharge.  The Luca Defendants are entitled to summary judgment as a matter of law on Plaintiff's retaliation and wrongful discharge claims.

### A.  Count 4: Intentional Infliction of Emotional Distress

Plaintiff also argues that Defendant Vasquez's conduct amounted to an intentional infliction of emotional distress and that the Luca Defendants are vicariously liable for the

---

[59] *Collette*, 126 F. App'x at 682 (citation omitted).
[60] *See id.* at 360 – 361 (finding that plaintiff who never told her employer that previously-addressed harassment had resumed had not shown that employer intended to force her to quit.)
[61] *Redlin v. Grosse Pointe Pub. Sch. Sy.*, 921 F.3d 599, 606 (6th Cir. 2019).

Case No. 22-cv-1896
GWIN, J.

emotional distress she suffered. But Plaintiff "has not presented evidence sufficient to demonstrate that she suffered a serious emotional injury."[62]

"To establish a prima facie case of intentional infliction of emotional distress under Ohio law, a plaintiff must show (1) that the defendant intended to cause or recklessly caused the plaintiff emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."[63]

In the Sixth Circuit, a plaintiff's testimony that they are under "constant stress" or even that they are experiencing physical symptoms of distress such as chest pain and tightness is insufficient to show a sufficiently "severe and debilitating" emotional injury, particularly if the plaintiff has not sought medical treatment for those symptoms.[64]

Here, Plaintiff has not even established mild symptoms of distress. She presented no evidence of being unable to find or resume work, nor of experiencing symptoms such as "traumatically induced neurosis, psychosis, chronic depression, or phobia."[65] Nor has she sought any medical treatment.

Moreover, an employer is vicariously liable for an employee's intentional infliction of emotional distress on another employee only if the company "promoted or advocated" the tortfeasor-employee's behavior.[66]  As discussed above, the Luca Defendants received no notice of Defendant Vasquez's conduct, they did not act or fail to act in ways that

---

[62] *Lopez v. Am. Fam. Ins. Co.*, 618 F. App'x 794, 805 (6th Cir. 2015).
[63] *Id.* at 804 (citation omitted).
[64] *Id.* at 805.
[65] *Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 869 (S.D. Ohio 2013).
[66] *Kasprzak v. DaimlerChrysler Corp.*, 395 F. Supp. 2d 636, 643 (N.D. Ohio 2005).

Case No. 22-cv-1896
GWIN, J.

would promote or advocate Vasquez's conduct. So, the Luca Defendants are entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

### B. Count 5: Negligent Supervision and Retention

Plaintiff next argues that Defendants are liable for the harm caused by Vasquez's harassment, as they negligently allowed the harassment to continue and for Vasquez to retain his position.[67]

To make a successful negligent retention or supervision claim under Ohio common law, a plaintiff must show: "(1) an employment relationship; (2) incompetence of the employee; (3) actual or constructive knowledge of the incompetence by the employer; (4) an act or omission by the employee which caused the plaintiff's injuries; and (5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries."[68]

Plaintiff's claims of negligent hiring and retention are dependent upon a showing that Vasquez's harmful conduct was foreseeable to the Luca Defendants.[69] "The foreseeability of a criminal act depends on the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are 'somewhat overwhelming' that the defendant will be held liable."[70]

Plaintiff has not established a genuine issue of fact as to whether Vasquez's alleged conduct was foreseeable to Luca West, as Luca West management lacked actual or constructive knowledge of Plaintiff's complaints against Vasquez. As discussed above,

---

[67] Doc. 1-2, PageID: # 15.
[68] *Fry v. Wheatland Tube, LLC*, 135 N.E.3d 420, 438-439 (Ohio Ct. App. 2019).
[69] *Browning v. Ohio Ste. Hwy. Patrol*, 786 N.E.2d 94, 103 (Ohio Ct. App. 2003) (*citing Evans v. Ohio State Univ.*, 680 N.E.2d 161, 170 (Ohio Ct. App. 1996)).
[70] *Evans*, 680 N.Ed.2d at 170.

Case No. 22-cv-1896
GWIN, J.

Luca West's management was unaware of Plaintiff's complaints, so they lacked actual

knowledge of the harassment.

Additionally, Luca West management did not have constructive knowledge of the

harassment. Plaintiff's reporting to Defendant Timmy Sema was not reporting to a

supervisor that would put an employer on notice.

Courts applying Ohio law have found genuine issues of fact regarding an

employer's constructive knowledge of harassment complaints only when those complaints

are made to employees in clearly defined or titled managerial roles.[71]

Here, Defendant Timmy functioned as Plaintiff's coworker, and was not her

supervisor in either title or authority.  Defendant Timmy did not possess authority over

other employees, even though he may have directed them during restaurant operations[72]

Luca West identified individuals who acted for the restaurant regarding harassment

in the employee handbook:  the restaurant's General Manager and the Executive Chef.

Defendants Manjola or Luca Sema acted for the restaurant regarding harassment, not

Defendant Timmy.  The handbook also instructed Plaintiff how to report any harassment

issues to Manjola and Luca Sema.[73]  In light of this, Defendant Timmy's alleged knowledge

is not imputable to Manjola and Luca Sema.

---

[71] *See, e.g., Fry v. Wheatland Tube, LLC*, 135 N.E.3d 420, 439 (Ohio App. Ct. 2019) (employee's report to foreman sufficed to establish employer's knowledge); *Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 823 (Ohio Ct. App. 1999) (plaintiff's complaints to Safety and Security Administrator sufficed to create genuine issue of material fact regarding employer's knowledge); *Jackson v. Richard*, No. 2:21-cv-574, 2022 WL 3701560, at *6 (N.D. Ohio Aug. 26, 2022) (employee's discussion with supervising Lieutenant imputed knowledge to City employer); *McIntyre v. Advance Auto Parts*, No. 1:04-CV-1857, 2007 WL 120645 (N.D. Ohio Jan. 10, 2007) (reports to District Manager created genuine issue of material fact of employer's knowledge); *Walter v. Zoological Society of Cincinnati*, No. 1:05-cv-327, 2007 WL 527872 (S.D. Ohio Feb. 14, 2007) (employee's reports to Zoo president created genuine issue of material fact for Zoo's knowledge).
[72] *See* Doc. 25-2, 25-3, 25-4, 33-1.
[73] *See Jackson v. Saturn of Chapel Hill, Inc.*, No. 2005 CA 00067, 2005 WL 2420392, ¶28 (Ohio Ct. App. Sept. 30, 2005) (summary judgment appropriate where appellant failed to bring problems to employer's attention through established channels in employee handbook, despite coworker's knowledge of harassment).

Case No. 22-cv-1896
GWIN, J.

Prior to Plaintiff's claims, Luca West management had no reason to believe that Vasquez was prone to sexual harassment.[74]  Luca West had not received prior complaints about Vasquez, nor had Vasquez exhibited performance issues.[75]  Plaintiff does not point to other evidence that shows a complaint record about Vasquez which may have put Luca West on notice.[76]  A reasonable jury could not find that that Vasquez's alleged behavior was foreseeable.

Because Luca West lacked actual or constructive knowledge of Plaintiff's complaints, the Luca Defendants are entitled to summary judgement on Plaintiff's negligent supervision and retention claim.

### III.    Conclusion

For the reasons discussed above, the Court **GRANTS** summary judgment to Defendants Luca West, Manjola Sema, Luca Sema, and Timmy Sema on all counts.


IT IS SO ORDERED.


Dated: October 2, 2023                                    s/     *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[74] Doc. 25-3, PageID: # 178; Doc. 25-4, PageID: # 222.
[75] *Id.*
[76] *See, e.g., Jackson v. Quanex Corp.*, 191 F.3d 647, 663-664 (6th Cir. 1999) (finding workplace bathroom graffiti containing racial slurs sufficiently "pervasive" harassment to impute constructive knowledge to employer).