UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| AUTUMN FIXEL, | CASE NO. 22-cv-1896 |
| Plaintiff, | ORDER |
|  | [Resolving Doc. 26] |
| v. |  |
| LSMJ1, LLC d/b/a Luca West, et. al |  |
| Defendants. |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this workplace sexual harassment case, Plaintiff Autumn Fixel says that her supervisor sexually harassed her on multiple occasions while she worked as a waitress at Luca West restaurant. Plaintiff sues her former supervisor, Defendant Manuel Vasquez, for harassing and sexually assaulting her.[1] Plaintiff also sues Luca West; its Chief Executive, Manjola Sema; its Executive Chef, Luca Sema; and Luca West chef Sheptim ("Timmy") Sema (collectively, the "Luca Defendants").[2]

Defendant Vasquez filed crossclaims against the Luca Defendants for indemnity and contribution, negligence, breach of contract, and promissory estoppel.[3] These claims allegedly arose from supposed promises to indemnify and defend Vasquez from Plaintiff's claims. The Luca Defendants have moved for summary judgment on Vasquez's crossclaims.[4] For the following reasons, the Court **GRANTS** the Luca Defendants' motion for summary judgment on all counts of Vasquez's crossclaims.

---

[1] Doc. 1-2, PageID #: 12.
[2] *Id.*, PageID #: 12-16.
[3] Doc. 16, PageID #: 107-110.
[4] On October 2, 2023, the Court granted Luca Defendants' motion for summary judgment on Plaintiff's claims. *See* Docs. 25, 44.

Case No. 22-cv-1896
GWIN, J.

## I. BACKGROUND

The Court has previously set out the facts concerning Plaintiff's allegations against Defendant Vasquez in its October 2, 2023, Opinion.[5] Relevant here are the details of Vasquez's employment with Luca West restaurant.

In March 2021, Luca West hired Defendant Manuel Vasquez as an Assistant General Manager at Luca West and promoted him to General Manager in June 2021.[6] That same month, Luca West hired Plaintiff Fixel as a server.[7] Cross-Claimant Vasquez interviewed Plaintiff Fixel and Cross-Claimant Vasquez says he expressed misgivings to the Luca Defendants about hiring Fixel.[8] Cross-Claimant Vasquez states that the Luca Defendants did not perform background checks on potential employees before hiring them.[9]

In August 2021, Plaintiff Fixel resigned, and Cross-Claimant Vasquez learned that Fixel had accused him of sexual harassment and other unwanted contact.[10] The Luca Defendants investigated Plaintiff Fixel's allegations and found them unsubstantiated.[11] The Westlake Police Department also investigated Plaintiff's allegations and could not corroborate them.[12]

Cross-Claimant Vasquez alleges that the Luca Defendants told him that they knew Plaintiff Fixel's allegations were false.[13] Specifically, Vasquez says that Defendant Manjola Sema, Luca West's Executive Chef, told Vasquez, "Don't worry about it, I'm going to take

---

[5] *See* Doc. 44, PageID #: 609-610.
[6] Doc. 32-1, ¶¶2-3.
[7] Doc. 33-1, ¶3.
[8] Doc. 32-1, ¶7.
[9] *Id.*, ¶29.
[10] *Id.*, ¶8-9.
[11] Doc. 26-3, PageID #: 350.
[12] Doc. 32-1, PageID #: 385.
[13] *Id.*, ¶32.

Case No. 22-cv-1896
GWIN, J.

care of it if [Plaintiff] makes a claim," and that the Luca Defendants would defend Plaintiff's claims against Vasquez.[14]

Vasquez states that he continued to work in reliance on Defendant Manjola's promises. Vasquez also claims that during his employment at Luca West, he was not provided sexual harassment training.[15]

In January 2022, Vasquez voluntarily resigned from his Luca West position.[16] After the Luca Defendants declined to defend him in the underlying action, Vasquez brought crossclaims against them for indemnity and contribution, breach of contract, promissory estoppel, and negligence, arising out of Defendant Manjola's alleged oral promise.

The Luca Defendants move for summary judgment on Vasquez's crossclaims, and Vasquez opposes.[17]

## II. DISCUSSION

### A. Summary Judgment Standard

"Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [...] [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[18]

---

[14] *Id.*, ¶33-34.
[15] *Id.*, ¶28.
[16] *Id.*, ¶38.
[17] *See* Docs. 26, 32.
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citations omitted).

Case No. 22-cv-1896
GWIN, J.

### B. Count One: Indemnity and Contribution

Vasquez says that because he was acting within the scope of his employment and because the Luca Defendants promised to provide him defense against Plaintiff's claims, the Luca Defendants must indemnify him.[19] Vasquez argues that at minimum, whether he or the Luca Defendants is liable for Plaintiff's claims raises a genuine issue of fact for the jury.[20] Vasquez's argument is unavailing, however, because he, and not the Luca Defendants, would be primarily liable as a matter of law.

"Indemnity arises from contract, express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement."[21] "Ohio law generally recognizes that implied indemnification is appropriate in certain limited circumstances where a party owes only secondary legal responsibilities and is passively negligent."[22] A party that is passively, or only secondarily negligent, has a right of indemnity against a party that is actively, or primarily negligent.[23]

"Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence."[24] Similarly, if one party is not at fault, it cannot indemnify the other: "[a]bsent fault, there is no basis for indemnification, since 'one party must be chargeable for the wrongful act of another as a prerequisite for indemnity.'"[25]

---

[19] Doc. 32, PageID #: 368.
[20] *Id.*
[21] *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, 743 (Ohio Ct. App. 1992) (*citing Travelers Indemn. Co. v. Trowbridge*, 321 N.E.2d 787, 789 (1975)).
[22] *Id.* (*citing Lattea v. Akron*, 458 N.E.2d 868, 872 (1982)).
[23] *Parsons Consol. Rail Corp. v. Sorg Paper Company*, 942 F.2d 1048, 1051 (6th Cir. 1991).
[24] *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31-32 (1993).
[25] *Rannals v. Diamond Jo Casino*, 250 F. Supp. 2d 829, 837-38 (N.D. Ohio 2003) (*citing Convention Ctr. Inn, Ltd. v. Dow Chem Co.*, 590 N.E.2d 898, 900 (1990)).

Case No. 22-cv-1896
GWIN, J.

Here, Vasquez is not entitled to indemnification by the Luca Defendants, because the Luca Defendants are not actively or passively liable for Vasquez's alleged harassment. In its October 2, 2023 Opinion, the Court held that the Luca Defendants were not liable for Plaintiff's Title VII hostile work environment, wrongful termination and retaliation claims, nor her state law negligent infliction of emotional distress and negligent supervision and retention claims.[26] An employer "cannot be found liable for negligence [it] did not commit."[27] So, Vasquez is not entitled to the Luca Defendants paying his legal fees, or any other indemnification.

Vasquez's contribution claim does not survive summary judgment for the same reasons. "The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability."[28] The Luca Defendants do not owe Vasquez for his potential overcontribution to their common liability, because the Luca Defendants did not contribute to any common liability.[29]

The Luca Defendants are therefore entitled to summary judgment on Vasquez's indemnity and contribution claim.

### C. Count Three: Breach of Contract

Vasquez next alleges that Luca West breached their contract by promising and then failing to indemnify him from Plaintiff's claims.[30] Vasquez argues that genuine issues of material fact exist as to whether Defendant Manjola's oral promise created an enforceable contract.[31]

---

[26] Doc. 44, PageID #: 608.
[27] *Wells v. Spirit Fabricating, Ltd.*, 630 N.E.2d 1046 (Ohio Ct. App. 1996).
[28] *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp. 2d 800, 803 (N.D. Ohio 2006) (*citing* R.C. § 2307.25(A)).
[29] *See* Doc. 44, PageID #: 608.
[30] Doc. 16, ¶¶60-64.
[31] Doc. 32, PageID #: 371.

Case No. 22-cv-1896
GWIN, J.

Under Ohio law, "[t]o recover upon a breach-of-contract claim, a plaintiff must prove 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'"[32] "To assert a claim that a contract existed, a plaintiff must allege facts showing an offer and an acceptance and a meeting of the minds, which is supported by consideration."[33]

"Consideration requires mutuality of obligation; it is a 'bargained for' legal benefit or detriment."[34] "Bargained for' means sought by the promisor in exchange for his promise or given by the promisee in exchange for that promise."[35] "Thus, in order for consideration to exist, there must be a benefit to the promisor or a detriment to the promisee."[36] "Whether there exists consideration is a proper issue for the trial court."[37]

For purposes of ruling on this motion, the Court accepts that Defendant Manjola made an oral promise to Vasquez. However, Vasquez must show that he exchanged the offer of continued employment for Manjola's defense and indemnity promises.[38]

Cross-Claimant Vasquez points to no evidence that he promised to continue working in exchange for Defendant Manjola's promises. Even if Vasquez's continued employment potentially resulted in a detriment to him, nothing in the record indicates that Vasquez's continued employment was bargained for, or that the continued employment related to any promise of indemnification or defense.[39]

---

[32] *Jarupan v. Hanna*, 876 N.E.2d 66, 73 (Ohio Ct. App. 2007) (*quoting Powell v. Grant Med. Ctr.*, 771 N.E.2d 874, 881 (Ohio Ct. App. 2002)).
[33] *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 932 N.E.2d 414, 444 (Ohio Ct. App. 2010) (*citing Kostelnik v. Helper*, 770 N.E.2d 58, ¶16 (2002), reconsideration denied, 774 N.E.2d 764 (2002)).
[34] *Prendergast v. Snoeberger*, 796 N.E.2d 588, 592 (Ohio Ct. App. 2003) (citations omitted).
[35] *Id.* (*citing Carlisle v. T&R Excavating, Inc.*, 704 N.E.2d 39, 43 (1997)).
[36] *Id.*
[37] *Id.*
[38] Doc. 32-1, ¶35.
[39] *See Carey v. Fedex Ground Package System, Inc.*, 321 F. Supp. 2d 902, 912 (S.D. Ohio 2004) (citations omitted).

- 6 -

Case No. 22-cv-1896
GWIN, J.

Because Defendant Manjola's promise lacked consideration, no contract for defense or indemnity existed between the parties.[40] The Court therefore grants summary judgment for the Luca Defendants on Vasquez's breach of contract claim.

### D. Count Four: Promissory Estoppel

In the alternative to his breach of contract claim, Vasquez says that the Luca Defendants should be estopped from reneging on their promise to defend him.[41] Vasquez says that material factual issues exist whether he detrimentally relied on Defendant Manjola's promise by continuing to work for Luca West and forgoing other employment opportunities.[42]

"A party seeking to establish promissory estoppel must prove: (1) a clear, unambiguous promise, (2) reliance on the promise by the person to whom the promise is made, (3) reasonable and foreseeable reliance on that promise, and (4) injury that results from that reliance."[43]

Vasquez has not shown that he detrimentally relied on Manjola Sema's promise. Courts have consistently held that under Ohio law, an employee's assertion that he refrained from seeking other employment does not establish detrimental reliance.[44] Without more, such an assertion does not raise a genuine issue of fact.

And, while Vasquez says that he gave up other employment opportunities to continue working at Luca West, the record does not indicate what those other employment

---

[40] *Carlisle*, 704 N.E.2d at 43 ("Gratuitous promises are not enforceable as contracts, because there is no consideration.").
[41] Doc. 16, ¶66.
[42] Doc. 32, PageID #: 372.
[43] *Ma v. Gomez*, 209 N.E.3d 178, 198 (Ohio Ct. App. 2023) (citations omitted).
[44] *See, e.g.*, *Manwaring v. Martinez*, 527 Fed. App'x 390, 400 (6th Cir. 2013) (*citing Wing v. Anchor Media, Ltd. of Texas*, 570 N.E.2d 1095, 1099 (1991)).

- 7 -

Case No. 22-cv-1896
GWIN, J.

opportunities might be, and Vasquez does not elaborate.[45] Accordingly, Vasquez's bare assertions are insufficient to establish detrimental reliance, and the Luca Defendants are entitled to summary judgment on Vasquez's promissory estoppel claim.

### E. Count Two: Negligence

Finally, Vasquez claims that the Luca Defendants owed him a duty to protect him against Plaintiff's allegations.[46] Vasquez says that they breached this duty by failing to investigate Plaintiff before hiring her and failing to provide him with defensive sexual harassment training.[47]

To establish negligence, a plaintiff must prove the existence of a duty, a breach of the duty, and an injury proximately resulting from that breach.[48] Whether a duty exists is a question of law for the court to determine.[49]

In Ohio, employers do not have a duty to investigate potential employees, absent prior indication that a hire poses a risk to others.[50] Vasquez has not alleged that the Luca Defendants were aware of facts that indicated Plaintiff Fixel posed a risk to others, prior to her hiring.[51]

Indeed, Vasquez has not shown that Plaintiff posed a risk, prior to her employment. Vasquez alleges that the Westlake police report stated that Plaintiff was a convicted felon who had previously made false allegations.[52] However, the police report in the record does

---

[45] Doc. 16, ¶68.
[46] *Id.*, ¶55.
[47] *Id.*, ¶56.
[48] *Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 633 (N.D. Ohio 2005) (*citing Mussivand v. David*, 544 N.E.2d 265, 270 (1989)).
[49] *Mussivand*, 544 N.E.2d at 270.
[50] *See Diemer v. Minute Men, Inc.*, 110 N.E.D 3d 152, 164 (Ohio Ct. App. 2018).
[51] *See Steppe v. Kmart Stores*, 737 N.E.2d 58, 67 (Ohio Ct. App. 1999) (*citing Kuhn v. Youlten*, 692 N.E.2d 226, 232 (1997)).
[52] Doc. 32-1, ¶¶26-27, 29-30.

- 8 -

Case No. 22-cv-1896
GWIN, J.

not contain these statements, and there is no other evidence, save Vasquez's affidavit, that indicate any dangerous tendencies. Nothing in the record shows that the Luca Defendants might have discovered such tendencies, were they to exist. The Luca Defendants therefore did not have a duty to protect Vasquez against Plaintiff by a pre-employment investigation.

Vasquez also does not cite to any legal authority to support his claim that employers have a duty to protect employees against sexual harassment allegations by providing employees with adequate training. Absent any controlling authority, the Court declines to find such a duty here.

Because Vasquez cannot establish that the Luca Defendants owed him a duty to protect him against Plaintiff's sexual harassment allegations, the Luca Defendants are not negligent as a matter of law. Therefore, the Court grants summary judgment to the Luca Defendants on Vasquez's negligence claim.

### III.  CONCLUSION

For the forgoing reasons, the Court **GRANTS** the Luca Defendants' motion for summary judgment on all counts of Vasquez's crossclaims.

IT IS SO ORDERED.

Dated: October 17, 2023            *s/    James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE